IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01137-MSK-MJW

RUSSELL J. JOHNSON, and
JENNIFER JOHNSON,

       Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

       Defendant.

_____

## OPINION AND ORDER GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

_____

**THIS MATTER** comes before the Court pursuant to Defendant Liberty Mutual Fire Insurance Co.'s ("Liberty") Motion for Summary Judgment (**# 28**), the Plaintiffs' response (**# 73**), and Liberty's reply (**# 82**); and Liberty's Motion to Dismiss (**# 63**), the Plaintiffs' response (**# 72**), and Liberty's reply (**# 78**).

## FACTS[1]

On July 27, 2000, Plaintiff Russell Johnson was driving on a highway in Wyoming when he was struck from the rear by a vehicle owned by Zimmerman Truck Lines ("Zimmerman") and

_____

[1]For purposes of this section, the Court summarizes the undisputed facts relevant to Defendant Liberty Mutual Fire Insurance Co.'s ("Liberty") summary judgment motion. To the extent necessary, the Court supplements the recitation here with additional factual material in the Analysis section. For purposes of the Motion to Dismiss, the Court sets out the relevant portions of the Amended Complaint as part of its analysis of that motion.

driven by Michael Dellock.  Mr. Dellock informed the police officer responding to the incident that Mr. Johnson's taillights were not illuminated at the time of the accident, a fact Mr. Johnson denied.  The Wyoming State Patrol issued a traffic citation to Mr. Johnson, and a representative of that agency removed one of the taillight assemblies from Mr. Johnson's truck for further examination.  Apparently in response to a threat of litigation by Zimmerman, Mr. Johnson remove the other taillight assembly and provided it to Liberty, his auto insurer.

Liberty sent both taillights to an expert at an entity called Fay Engineering for examination.  In November 2000, the expert issued his report, concluding that the condition of the taillights suggested they were indeed illuminated at the time of the accident.  In addition to the report, Fay Engineering returned the taillights to Liberty.  As a result of the  expert's conclusion, the State Patrol dismissed the citation against Mr. Johnson.  In 2002, having successfully repelled the risk of litigation by Zimmerman, Liberty closed its claim file on the case.

In July 2004, the Plaintiffs commenced a civil action against Zimmerman and Mr. Dellock in Wyoming, claiming that Mr. Dellock was responsible for injuries sustained by Mr. Johnson in the accident.  During the discovery phase of that case, the Plaintiff's lawyer sought to obtain the taillight assemblies, but was advised by Liberty that the taillights could not be found and, in all likelihood, had been destroyed at the time the claim file was closed. A representative of Liberty testified to that effect in a deposition in the Wyoming case on July 14, 2005.  Faced with a spoliation ruling by the Wyoming court that limited the Plaintiffs' ability to refute Mr. Dellock's contention that the taillights were not illuminated at the time of the accident, the Plaintiffs settled the Wyoming suit for $ 350,000.

2

On July 19, 2007, the Plaintiffs commenced this action against Liberty.  The original

Complaint (**# 2**), alleged two causes of action under Colorado law: (i) "negligence of bailee," in

that Liberty violated its duty to exercise reasonable care in safeguarding the taillight assemblies;

and (ii) "spoliation of evidence," in that Liberty was aware of the evidentiary significance of the

taillights, yet destroyed them.

Liberty filed the instant Motion for Summary Judgment (**# 28**), arguing that: (i) Colorado

law does not recognize a claim for "spoliation of evidence"; (ii) the claim for "negligence of

bailee" is simply a re-designation of the same, unrecognized claim for spoliation; (iii) under

Colorado law, damages for a claim of negligence by a bailee is limited to the value of the lost

property; and (iv) the claims are barred by the statute of limitations.

Thereafter, the Plaintiffs filed an Amended Complaint (**# 60**), repeating the negligence of

bailee and spoliation claims, and asserting a new third claim for relief – that Liberty's conduct in

failing to preserve the taillight assemblies constituted a bad faith breach of the insurance contract

between the Plaintiffs and Liberty.  Liberty responded to the Amended Complaint with the

instant Motion to Dismiss (**# 63**), in which it argued: (i) that the Plaintiffs lack standing to bring

this action as they have not alleged any injury in fact, but rather, mere speculation that the

outcome of a trial in the Wyoming case would have yielded a different result; (ii) the claims for

negligence and spoliation fail to state claims recognized in Colorado law, for essentially the

same reasons presented in the summary judgment motion; and (iii) the bad faith breach of

contract claim fails to state a cognizable claim under Colorado law, as it asserts neither a "first-

party claim" for failure to pay benefits or a "third-party claim" in which Liberty mishandled a

claim against the Plaintiffs by a third party.

## ANALYSIS

### A.  Summary judgment motion

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Here, the parties' primary dispute is not particularly one of fact, but rather, one of law – that is, whether Colorado law contemplates claims for "spoliation of evidence" and "negligence of bailee" in these circumstances.

1. Spoliation claim

Turning first to the claim for "spoliation of evidence," the Plaintiffs admit that "no Colorado state case . . . squarely confronts the issue of whether a third-party's loss or destruction of evidence is actionable."  However, they argue that "it is clear that," under general Colorado law regarding the creation of legal duties and principles of recognized tort law that "Colorado courts would recognize a duty on the part of Liberty Mutual . . . to avoid losing or destroying the taillight assemblies," either "under the specific rubric of 'spoliation of evidence' or simply as an application of well-settled principles of Colorado tort law."

Where, as here, diversity of citizenship between the parties requires a federal District Court hears an action sounding in state law, the Court is required to follow the decisions of the state's highest court or, where no controlling decision exists, the Court must predict how the state's highest court would rule on the issue.  *Grynberg v. Total, S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008).  In making such a prediction, the Court may look to state appellate court decisions, decisions from other jurisdictions, statutes, and treatises.  *U.S. v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004).  As the Plaintiffs acknowledge, there are no reported decisions from any court in Colorado addressing the viability of a distinct claim for spoliation of evidence.

The Plaintiffs point the Court to a 2002 ALR article entitled "Negligent Spoliation of Evidence, Interfering With Prospective Civil Action, as Actionable."  101 A.L.R.5th 61.  That article notes that "a number of states have recognized the actionability of negligent spoliation,"

but also observes that "[t]he majority of jurisdictions considering the actionability of negligent spoliation, however, have not recognized the tort." *Id.* § 2(a).  The author goes on to observe that "Courts have split on whether insurance companies have a duty to preserve evidence, most finding no such duty." *Id.*   Without attempting a labored analysis of each case cited, it is sufficient for this Court to observed that the majority rule in other jurisdictions appears to be towards non-recognition of an actionable claim for spoliation of evidence.  *See generally Metlife Auto & Home v. Joe Basil Chevrolet, Inc.,* 753 N.Y.S.2d 272, 274-282 (N.Y. App. 2002).

The *Metlife* decision cited above is particularly persuasive.  There, an insurer, having acquired possible product liability and other claims from its insured whose house was damaged in a fire, sought to sue the manufacturer and owner of a motor vehicle that had caused the fire. The key item of evidence, the burned vehicle, was taken into custody by the vehicle's owner's insurer and, despite requests by the plaintiff that the vehicle be preserved and inspected, disposed of the vehicle.  The plaintiff sought to assert a claim against the insurer for spoliation, but the court dismissed the claim.  After extensively collecting cases that show, much like the A.L.R. article above states, that the majority trend is to reject such claims, the court explained that "Recognition of a cause of action for third-party spoliation is fraught with pitfalls." *Id.* at 279.  Among other things, the court was troubled by: (i) the potentially limitless duty it would impose on those holding items that might become evidence in as-yet-commenced litigation, rather than  placing the burden on the party seeking preservation to secure it; (ii) the intrusion upon traditional property rights that would accompany a rule holding a party liable for destroying or discarding its own property; (iii) the potential for abuse and successive litigation; (iv) the fact that such suits would often involve speculation as to the significance and effect of

the missing evidence in the prior (or aborted) litigation[2] and associated difficulties with causation and measurement of damages, among many others. *Id.* at 279-80. The court concluded that "it would be extremely difficult if not impossible to rationally limit, explicitly define, and coherently articulate the outer limits of any judicially-declared duty on the part of third parties to preserve evidence for the benefit of litigants or potential litigants." *Id.*

Having carefully considered the issue, this Court believes that, were the Colorado Supreme Court to consider the question,[3] it would join the majority of jurisdictions that decline the recognize a standalone tort claim for spoliation of evidence. The Plaintiffs offer extensive and impressively thorough arguments analogizing the duties underlying a claim for spoliation to legal duties currently imposed under existing Colorado tort law. However, the Plaintiffs fail to recognize that those same tort duties exist in similar form in many states, yet recognition of a tort claim for spoliation remains the exception, not the rule. The litany of concerns recited by the court in *Metlife* offers some explanation why the majority of jurisdictions considering the question have been reluctant to extend their tort law so far. Admittedly, some courts have

---

[2]This Court is particularly troubled by the inescapable paradox that would arise in every case involving a spoliation claim. In the case below, the loss or destruction of the evidence gave rise to concerns of fairness, as the opposing party had no ability to inspect, evaluate, and ultimately challenge the contents or significance of the missing evidence. In a subsequent tort claim against the third-party spoliator, the missing evidence is still missing, and the exact same concerns about the ability of the opponent to challenge the spoliation plaintiff's contentions about the nature and significance of the missing evidence remain just as present.

The fact that, in this particular case, the Plaintiffs and Liberty apparently agree as to what inspection of the taillights would have revealed reduces that concern somewhat, but does not ameliorate the systemic problem that will vex many other spoliation claims were the Colorado Supreme Court to recognize the tort.

[3]This Court notes that neither party has requested that this Court certify the question to the Colorado Supreme Court for resolution pursuant to Colo. App. R. 21.1(a)

wrestled with the problems posed by recognition of the tort and overcome them, *see e.g. Diana v. NetJets Services, Inc.*, 974 A.2d 841, 663-676 (Conn. Super. 2007) (rebutting *MetLife*'s concerns point-by-point), but again, the majority of jurisdictions considering the question have not. The Plaintiffs have failed to show how Colorado law so differs from the mainstream that one could reliably predict that the Colorado Supreme Court would buck the national trend and side with the minority of jurisdictions on this difficult question, and thus, this Court finds that Colorado would not recognize a standalone tort claim for spoliation of evidence. As a result, Liberty is entitled to summary judgment on that claim.

### 2. Negligence of bailee

In contrast to the lack of caselaw recognizing the spoliation claim, existing Colorado law provides that a bailee owes a duty to the bailor to exercise reasonable care to protect the bailor's property. *In re Marriage of Amich and Adiutori*, 192 P.3d 422, 426 (Colo. App. 2007). If the bailee cannot redeliver the property to the bailor, a presumption of negligence on the part of the bailee arises.[4] *Id.*; *see* CJI Civ. 4th 16:6 (pattern jury instruction for presumption of negligence by bailee). A bailment relationship exists anytime a person lawfully takes possession of another person's property with an express or implied agreement that the property will be returned or accounted for at the bailor's request. *Christensen v. Hoover*, 643 P.2d 525, 529 (Colo. 1982). Where no agreement exists between the parties, a "constructive bailment" may arise simply upon one person taking lawful possession of another's property. *Id.*

---

[4]The presumption arises because Liberty's possession of the Plaintiffs' taillights was a bailment for the mutual benefit of the parties. *Christensen v. Hoover*, 643 P.2d 525, 530 (Colo. 1982). Both parties hoped that Liberty's testing of the taillights would demonstrate Mr. Johnson's non-culpability for the accident, benefitting Mr. Johnson through dismissal of the traffic citation and benefitting Liberty through preventing litigation by Zimmerman.

Liberty first argues that recognizing a claim for negligence by a bailee in these circumstances is tantamount to recognizing a claim for spoliation of evidence.  In support of this proposition, Liberty relies entirely on *Moore v. U.S. Dept. of Agriculture Forest Service*, 864 F.Supp. 163, 165 (D. Colo. 1994).  In *Moore*, the plaintiffs were injured while riding vehicles supplied by Nova and manufactured by Yamaha.  The plaintiffs sought to assert product liability claims against Yamaha, only to find that Nova had disposed of the vehicles.   Faced with the loss of the potential claims against Yamaha, the plaintiffs sought to amend their complaint to allege tort claims of negligent interference with prospective economic advantage against Nova, arising out of the disposal of the vehicles.  After finding that Colorado law did not recognize a tort claim for spoliation, Judge Kane turned to the question of whether the plaintiffs' theory was nevertheless cognizable via another tort.  *Id.* at 165.  Observing that Colorado law governing the tort of interference with economic advantage had been recognized in several circumstances, but not specifically to include injuries resulting from spoliation of evidence, Judge Kane concluded that the claim was not cognizable under Colorado law.  *Id.*

Unlike Liberty, this Court does not read *Moore* for the proposition that one may look behind the face of a properly-pled tort claim to ascertain the intention of the pleader and reject the claim where it is analogous to another claim that is not recognized by the law.  Rather, *Moore* simply recognizes that Colorado law had not extended the notion of "economic advantage" under the tort to extend to the loss of a litigation position due to the loss of bailed evidence.  *Id.* ("The *Dolton* court only discussed interference with the formation of a contract. Colorado has since expanded this tort to include interference with other types of economic advantage. Colorado, however, has not expanded this tort to include injuries resulting from an

alleged spoliation of evidence.") (citations omitted).  In short, Judge Kane rejected the proposed

amendment in *Moore* not because the claim sought to be asserted was the analogue of a

prohibited tort claim of spoliation, but because the claim was insufficiently pled – Colorado law

had not recognized spoliation as a type of "interference with economic advantage" sufficient to

plead a viable claim.

Here, the Plaintiffs have adequately alleged a claim for negligence of bailee.  The

undisputed facts show that Liberty took possession of their property, thereby becoming a bailee.

Although there may be some dispute between the parties as to what specific instructions the

Plaintiffs gave (or did not give) Liberty when delivering the taillights, that dispute is immaterial,

as Liberty's simple possession of the taillights, even without any specific agreement among the

parties as to how they would be disposed , is enough to create at least a constructive bailment

under *Christensen*.  643 P.2d at 529.   Further, the undisputed facts show that Liberty was later

unable to redeliver the property to the Plaintiffs upon their request, giving rise to a presumption

that Liberty was negligent in losing the property.   *Id.*  This is all that is necessary for the

Plaintiffs to demonstrate a *prima facie* case for negligence of bailee.  Because the Plaintiffs  have

pled a viable claim under existing Colorado tort law, Liberty is not entitled to summary

judgment.[5]

3.   Measure of damages

Liberty argues that if the Plaintiffs' negligence of bailee claim survives, Colorado law

___

[5]The Court infers from Liberty's motion that it does not vigorously dispute that a claim
for negligence of bailee cannot exist in these circumstances, but rather, that the measure of
damages sought by the Plaintiffs – the value of the underlying claim in Wyoming, as opposed to
the loss of value of the property itself – is incorrect.  The Court addresses that argument in the
next section.

permits them to recover only the market value of the missing taillights, not the consequential damages reflecting the value of the lawsuit in which they would have been used.

When a bailee's negligence results in loss or damage to the bailed property, the measure of recoverable damages depends on the nature of the property bailed.  For goods that have a market value, the measure of damages is the difference between the market value of the goods in their current condition and their market value had they not been lost or damaged.  *Keefe v. Bekins Van & Storage Co.*, 540 P.2d 1132, 1135 (Colo. App. 1975).  Where the property does not have any meaningful market value – *e.g.* photographs and personal effects – the measure of damages for their loss or damage is determined by ascertaining "a reasonable value on the basis of their value to the owner."  *Id.* at 1135-36.  This is not a license to the owner to devise "any fanciful value he might place upon them," but rather, a reasonable value that is derived from considerations such as the original cost of the goods, the practicability and expense of replacement, and the value ascribed to them by the owner based on the nature and condition of the goods and the purpose to which they were adapted and used.  *Id.* at 1136.  Unfortunately, beyond the general rule cited in the *Keefe* case, Colorado law has not revisited or applied that rule in cases involving the valuation of non-marketable goods, leaving the Court unable to apply the rule of *Keefe* in an informed manner.

Examining the problem from another angle, then, the Court observes that the Plaintiffs' contention that the taillights' value extends to the value of the claims in the litigation they would have been used in is an invocation of the legal concept of "consequential damages" – that is, "losses that do not flow directly and immediately from an injurious act, but that result indirectly from the act."  *Black's Law Dictionary*, 7th Ed. at 394.  Under Colorado tort law, consequential

damages are recoverable where they were both "reasonably foreseeable" and "proximately caused" by the tortious conduct. *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 870-72 (Colo. 2002). "Reasonable foreseeability" exists where "a reasonably careful person, under the same or similar circumstances, would have anticipated that injury to a person in the plaintiff's situation might result from the defendant's conduct." *Id.* at 872. Thus, to show that the injury to their claims against Zimmerman were reasonably foreseeable to Liberty at the time the taillights were lost or destroyed, the Plaintiffs must show circumstances that would demonstrate that a reasonably careful person in Liberty's position "would have anticipated" that the taillights would be needed by the Plaintiffs for future litigation.

The Plaintiffs have failed to come forward with evidence sufficient to demonstrate a genuine issue of fact on this point. It is apparently undisputed that, when tendering the taillights to Liberty, neither Plaintiff informed Liberty of their intentions to affirmatively file lawsuits relating to the accident, nor their need to preserve the taillights in furtherance of that contemplated litigation. Rather, both Plaintiffs testified that at the time they delivered the taillights to Liberty, their primary concern was obtaining the dismissal of the traffic citation; Mr. Johnson testified expressly to that effect, and Ms. Johnson testified that, after having learned that the citation was dismissed, she "kind of forgot about [it]." As a result, the Plaintiffs admit that they "never instructed anyone" at Liberty regarding their intention (or lack thereof) to preserve the taillights. The record does not reflect when, precisely, Liberty lost or destroyed the taillights, but it is undisputed that, whenever that date was, it occurred prior to Liberty ever learning that the Plaintiffs had commenced a suit against Zimmerman for which the taillights were necessary evidence. A cynic might contend that, in today's society, one should always expect that an auto

12

accident resulting in physical injuries will inevitably lead to civil litigation by the injured party (and, correspondingly, the need for a bailee to retain potential evidence in anticipation of that inevitable suit), but the dour cynic is not the reasonable person through whose eyes the Court looks.  Absent evidence that would lead a reasonable person in Liberty's circumstances to anticipate the Plaintiffs' desire to preserve the taillights for use in a future affirmative action, the Plaintiffs fail to carry their burden of demonstrating an entitlement to recover consequential damages relating to the loss or destruction of those taillights.

The Plaintiffs offer an abbreviated suggestion that Liberty violated its own internal policies, which require that physical evidence obtained in conjunction with a claim file be preserved for six years after that claim file is closed.  But recognizing that Liberty violated its own policies adds nothing to the analysis; indeed, had Liberty not violated its policies, this dispute would never have arisen.  More importantly, the Plaintiffs do not point to any evidence explaining Liberty's justification for the policy, thus failing to demonstrate that the policy reflects an assumption by Liberty that affirmative litigation involving its insureds is inevitable and that preservation of physical evidence in its claims file is necessary in order to avoid prejudicing the insureds in such cases.  Thus, no reasonable factfinder could infer, from the existence of Liberty's recordkeeping policies alone, that Liberty should reasonably have foreseen the possibility of injury to a future lawsuit by the Plaintiffs at the time Liberty lost or destroyed the taillights.

Accordingly, the Plaintiffs have failed to come forward with evidence that, taken in the light most favorable to them, would demonstrate that the possibility of consequential damages from the loss or destruction of the taillights was reasonably foreseeable to Liberty.  In the

absence of such a showing, the Plaintiffs are not entitled to claim such consequential damages on

their claim for negligence of bailee.  Although the factors in *Keefe* do not clearly define the

contours by which the Court could ascertain the precise amount of damages recoverable for the

loss of the taillight, this Court concludes that Liberty is entitled to summary judgment on that

portion of the Plaintiffs' claim that seeks consequential damages relating to the value of the

claim sought to be asserted in the Wyoming action.

### 4.  Statute of limitations

Finally, the Court briefly addresses Liberty's argument that the Plaintiffs' negligence

claim is barred by the statute of limitations.  Liberty contends that the claim accrued no later than

July 14, 2005, when a Liberty representative testified regarding the missing taillights in a

deposition in the Wyoming action, and that the two-year statute of limitations expired a few days

prior to the Plaintiffs' commencement of this suit on July 19, 2007.  C.R.S. 13-80-102(1)(a) (two

year statute on tort claims sounding in negligence); C.R.S. § 13-80-108(8) (cause of action

accrues upon the plaintiff's discovery of the injury).

The Court finds that there is a genuine dispute of fact as to whether the Plaintiffs knew of

their injuries from the loss or destruction of the taillights – and thus, that their claim accrued –

prior to July 19, 2005.  Although a Liberty representative testified in a Fed. R. Civ. P. 30(b)(6)

deposition in the Wyoming action on July 14, 2005, the transcript of that deposition reveals that

the representative stated only that "[a]t this time, we're unable to produce for you the physical

evidence," and that "[w]e do not know if the evidence was disposed of."  This qualified

testimony is insufficient to establish that the Plaintiffs' injury – permanent deprivation of the

taillights – had actually occurred by that date.  The record does not clearly indicate the date upon

which Liberty notified the Plaintiffs that it conclusively determined that the taillights were gone
and had ceased its efforts to find them – thus conclusively informing the Plaintiffs of the injury
and beginning the running of the statute of limitations – and thus, the Court cannot conclude that
Liberty has shown that that date, whatever it was, was earlier than July 19, 2005.[6]

Accordingly, Liberty's request for summary judgment on the negligence of bailee claim
on the grounds of timeliness is denied.

**B.  Motion to dismiss**

Liberty's Motion to Dismiss repeats, in form or substance, many of the arguments
discussed above, and thus, the Court need not revisit them.[7]  The only new argument raised in the
motion is directed at the Plaintiffs' newly-added claim for bad faith breach of insurance contract,
which Liberty contends fails to state a cognizable claim under the circumstances alleged herein.

 In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all
well-plead allegations in the Complaint as true and view those allegations in the light most
favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d
1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d
1226, 1236 (10th Cir. 1999).  The Complaint should not be dismissed for failure to state a claim
"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

[6]The Plaintiffs cite, without attaching supporting evidence, that there were additional
representations made by Liberty that the search for the taillights continued until July 19, 2005 or
later.  Because these assertions are not supported by citation to evidentiary material, the Court
does not consider them.  *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097
(10th Cir. 1999); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[7]Insofar as the Court has concluded that the Plaintiffs have adequately alleged a claim for
negligence of bailee with regard to the loss of the Plaintiffs' physical property, the Court rejects
Liberty's argument that the Plaintiffs lack standing to bring this action.

which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards. First, although "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." *Id.* Second, because the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," the court must first identify and disregard averments that "are no more than conclusions [which] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). The court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether the plausibly give rise to an entitlement to relief. *Id.*

Under Colorado law, claims for bad faith breach of contract arise by virtue of the special relationship between the insurer and insured, which in turn imbues every insurance contract with an implied duty of good faith and fair dealing that is actionable in tort. *Goodson v. Am. Standard*

16

*Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004). These claims arise in two contexts: (ii) a "first-party" claim where the insurer "refus[es] to make or delay[s] payments owed directly to its insured," thereby exposing the insured to personal liability for monetary obligations owed by the insurer; and (ii) "third-party" claims, where the insurer acts unreasonably in investigating, defending, or settling a claim brought by a third person against the insured. *Id.* In either situation, a breach of the duty of good faith and fair dealing by the insurer is actionable via a bad faith claim, even where the insurer eventually pays the insured's claims or defends the third-party suit; the action giving rise to the claim is the insurer's unreasonable conduct in tort, and breach of the insurance contract's express terms is not essential. *Id.*

Liberty argues that because the Plaintiffs' bad faith claim does not fall within either the "first-party" or "third-party" contexts – *i.e.* it does not involve delay in payment of benefits to the Plaintiffs or unreasonableness in the defense of a claim against them – it is not cognizable. The Plaintiffs respond with an argument that the duty of good faith "permeates all of the dealings of the parties," and permits a bad faith claim to be brought in any situation where the insurer's conduct is unreasonable. *Citing Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1268 (Colo. 1985) *and Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1363 (Colo. 1993). *Savio* is of no assistance in this situation, as that case involved a traditional first-party claim by an insured for unreasonable delay in payment of benefits. *Ballow*, on the other hand, entailed the Colorado Supreme Court rejecting the argument that "insurance bad faith does not apply outside the claims context." *Id.* at 1363. Finding a bad faith claim permissible where the conduct at issue involved an insurer who engaged in bad faith with regard to renewals of its customers' policies. "This duty [of good faith], the Court explained, "is not limited . . . merely to the claims or cancellations contexts.

17

Instead, the duty . . . is a broad and wide-ranging one, extending to 'everything pertaining' to the provision of insurance services." *Id.*

In light of *Ballow*, Liberty's contention that bad-faith claims must fall within the traditional "first-party" or "third-party" paradigms is without merit.  As *Ballow* indicates, every component of the insurer's relationship with the insured is subject to a requirement of good-faith, and the "first-party"/"third-party" paradigm merely provides a guideline for which analytical framework to apply to a bad-faith claim.  *Id.* at 1363 ("In this setting, we believe that good faith should be measured according to the legal standard used in the first-party claims context").  Given the breadth of Liberty's duty of good-faith towards the Plaintiffs, this Court finds that a claim for breach of that duty is cognizable in tort.

That is not the end of the inquiry, however.  Liberty's motion is susceptible to a reading that challenges the sufficiency of the Plaintiffs' pleading of the bad-faith claim.  As in *Ballow*, the claims here entail obligations between Liberty and the Plaintiffs, not third parties, and thus, the first-party paradigm provides the appropriate analytical structure.  Thus, the Plaintiffs are required to allege: (i) that Liberty engaged in unreasonable conduct with regard to the parties' insurance relationship; (ii) that Liberty either knew of the unreasonableness of its conduct or acted with reckless disregard of such unreasonableness; and (iii) that the Plaintiffs were injured as a result.  *Id.* at 1363; *McKelvy v. Liberty Mut. Ins. Co.*, 983 P.2d 42, 44 (Colo. App. 1998); CJI 4th 25:2.  Conduct is "unreasonable" when the insurer acts in a way a reasonably careful person would not, or when it fails to act in a way a reasonably careful person would.  *Miller v. Byrne*, 916 P.2d 566, 572 (Colo. App. 1995).  An insurer acts with the requisite scienter when it acts unreasonably "with knowledge of facts that indicate that its conduct lacks a reasonable

basis" or when it is "deliberately indifferent to information concerning" the issue.  CJI 4th 25:5.

Here, the Amended Complaint alleges five specific acts that the Plaintiffs contend were unreasonable: (i) "insisting on retaking physical custody of the taillight assemblies from Fay Engineering, despite its lack of a system and appropriate procedures for properly preserving and documenting the chain of custody of physical evidence"; (ii) "insisting on retaking" the taillights "in order to save a nominal storage fee charged by Fay Engineering"; (iii) "converting the taillight assemblies . . . to its own use in successfully prosecuting a subrogation claim against Zimmerman . . . and probably losing the taillight assemblies in the process, thereby failing to give equal consideration the Johnsons' rights and interests as it gave its own"; (iv) failing to follow its own internal procedures to preserve the taillights "at a time when it knew, or should have known, of [their] evidentiary significance to the Johnson's claims . . ."; and (v) "misrepresenting its knowledge or belief that the tailing assemblies had been destroyed to attorneys acting on behalf" of the Plaintiff.  *Docket* # 60, ¶ 29.  The Court assumes, without necessarily finding, that at least some of these allegations sufficiently describe conduct that can be considered "unreasonable," thus satisfying the first element of the claim.

However, the Court finds that the Plaintiffs have failed to allege facts that would show that Liberty's unreasonable conduct was performed with knowledge of facts that showed it to be unreasonable or with deliberate indifference to information that would suggest such unreasonableness.  The only clear allegation by the Plaintiffs of Liberty's state of mind is the allegation that Liberty "knew, or should have known, of [the] evidentiary significance to the Johnsons' claims" of the taillights.  This allegation is entirely conclusory; it does not identify the facts that indicate that Liberty "knew or should have known" of the significance of the taillights

to litigation that had yet to be commenced.  For example, it does not (and based on the

evidentiary showing made by the Plaintiffs with regard to the summary judgment motion,

cannot) allege that Liberty was aware of the Plaintiffs' intentions to commence a civil suit

against Zimmerman, or offer any other explanation for the conclusion that Liberty "should have

known" of the need to preserve the taillights.  As the Supreme Court explained in *Twombly* and

*Iqbal*, *supra.*, simply asserting conclusions without supporting facts is insufficient to carry the

pleader's burden under Rule 12(b)(6).

Because the Plaintiffs fail to plead facts that would show Liberty's state of mind in taking

the unreasonable actions, the bad-faith claim fails to state a claim under Rule 12(b)(6) and is

subject to dismissal.[8]

## CONCLUSION

For the foregoing reasons, Liberty's Motion for Summary Judgment **(# 28)** is

**GRANTED IN PART**, insofar as Liberty is entitled to summary judgment on the Plaintiffs'

"spoliation of evidence" claim and that portion of the negligence of bailee claim that seeks

consequential damages, and **DENIED IN PART**, insofar as the Plaintiffs have demonstrated a

---

[8]Although pleading deficiencies are often curable by amendment of the pleading, the Court declines to *sua sponte* grant the Plaintiffs leave to replead.  Among other things, the Court notes that the Scheduling Order's deadline for amendment of pleadings has long since passed and the Pretrial Conference in this case is imminent.  Should the Plaintiffs believe they can both cure the pleading defect by amendment and show good cause for seeking leave to amend this late in the litigation, the Court will entertain a motion for leave to amend, but makes no representations as to the likelihood of such a motion being granted.

Moreover, the Court offers the unsolicited observation that, even if a viable bad-faith claim were pled by the Plaintiffs, such a claim sounds in tort and is subject to the same analysis discussed above with regard to the measurement of damages in the negligence of bailee claim.  Thus, it appears unlikely that, even with a viable bad-faith claim, the Plaintiffs would be able to recover the consequential damages – the full value of the Wyoming claim – that likely provide the bulk of the motivation for this litigation.

genuine issue of material fact requiring trial on the negligence of bailee claim.  Liberty's Motion

to Dismiss **(# 63)** is **GRANTED IN PART**, insofar as the Plaintiffs' bad faith breach of contract

claim fails to state a claim under Rule 12(b)(6) and is therefore **DISMISSED**, and **DENIED IN**

**PART**, in all other respects.

Dated this 2nd day of September, 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge